**Willie STOKES, Plaintiff,**

v.

**JANOUSH TOWING, INC., Defendant,**

**Bunge Corporation, Third Party Defendant.**

**No. LR–C–86–399.**

United States District Court, E.D. Arkansas, W.D.

May 18, 1988.

**199**

Frank S. Thackston, Jr., Greenville, Miss., for third party defendant.

## MEMORANDUM OPINION

HENRY WOODS, District Judge.

The above styled and numbered cause, which was filed in admiralty under the general maritime law, was tried by me on May 11 and May 12, 1988. It is factually a simple case. The plaintiff slipped and fell on the deck of Barge 43 while performing duties as a deckhand on defendant Janoush's tow vessel BETH JACKS. Barge 43, a hopper barge, was loaded with soybeans at Clarendon, Arkansas and was taken in tow there by the BETH JACKS. The latter already had in tow Barge 155, which had been picked up at Des Arc, Arkansas. Both barges were owned by defendant Bunge and were to be towed to Rosedale, Mississippi.

The plaintiff and the mate, Johnny Bowden, were engaged in lashing the barges together shortly before midnight on February 19, 1986. A ratchet was being used to tighten the bow lines. Both men were tugging on the ratchet when plaintiff fell. There is no question as to his fall. Nor is there a question concerning an accumulation of dew on the barge deck. The only real issue is whether there was an accumulation of grain dust which contributed to his fall, as claimed by the plaintiff. Plaintiff's testimony in this regard is disputed by the mate Bowden, the captain, Rickey Davis, and the pilot, Rickey Agee. It is significant that the report of the accident made shortly thereafter contains the following description of the accident: "While jerking ratchet on head of tow Willie Stokes slipped and hurt his back. Deck on barge was wet because of heavy dew." In a previous deposition plaintiff admitted this description was in his own hand writing, but at trial denied he had written it.

■ The acceptance of plaintiff's version of the occurrence entails weighing his testimony against that of three other crew members. I am unable to give significant weight to plaintiff's testimony for the sim-

L. Thomas Lakin and Mark T. McCloskey, East Alton, Ill., for plaintiff.

Frank J. Danton, Greenville, Miss., for defendant.

ple reason that plaintiff's testimony in two depositions and at the trial is filled with scores of inconsistences and in some instances outright perjury. To recite all these inconsistences and falsities would be a work of supererogation. After listening to plaintiff's testimony and his impeachment by two previous depositions, I find that plaintiff is not worthy of belief and that accumulation of grain dust played no role in his fall. Therefore, his claim of negligence on the part of the defendants and his claim of unseaworthiness of Barge 43 must fail. There is not a scintilla of evidence that either defendant or their agents and/or employees were negligent. "The temporary presence of water does not constitute unseaworthiness—to hold otherwise would make the shipowner an insurer." *Lieberman v. Matson Navigation Co.*, 300 F.2d 661 (9th Cir.1962) quoting from *Garrison v. United States*, 121 F.Supp. 617 (N.D.Cal.1954). *See also Lind v. American Trading & Production Corp.*, 294 F.2d 342 (9th Cir.1961) and *Keel v. Greenville Mid–Stream Services, Inc., et al.*, 321 F.2d 903 (5th Cir.1963). In *Turner v. The Cabins Tanker, Inc.*, 327 F.Supp. 515 (D.Del.1971), the court instructed that "the mere presence of water on an open or exposed deck does not in and of itself render a ship unseaworthy." *Id.* at 518.

■ After reading all of the medical depositions and hearing the testimony, I am not convinced that plaintiff suffered any significant injury in the fall. Janoush up until a short time ago paid him maintenance at the rate of $15.00 per day and paid for his initial hospitalization and medical care by a physician of their choice. Without notice to his employer, plaintiff however, on the advice of his lawyer and a friend, changed doctors. Dr. Richard A. Knutson, who treated him from the time of his injury until April 25, 1986, performed the usual diagnostic procedures including a myelogram and found no objective evidence of a herniated disc. His new physician, Dr. John W. McFadden, performed a discogram, an outmoded diagnostic procedure, on May 20, 1986 and diagnosed an abnormality at L4–L5 in the lumbar spine. On October 31, 1986, McFadden reported that "this patient has reached maximum medical recovery and that he has a 5% partial permanent impairment to the body as a whole secondary to his L4, L5 disc injury." This represents a minimal amount of disability. However, I question the existence of any disability.

The record is replete with evidence of abundant physical activity by the plaintiff during the period of his alleged disability. He has been involved in at least three barroom brawls, in one of which he scored a knockout punch with one blow. This fight occurred because he had moved in on his antagonist's girl friend. Plaintiff's sexual conquests during this period have been rather legendary. He has lived with several young women; one relationship lasted more than a year. This woman testified as to various feats of physical exertion and denied that he had ever made significant complaints about back trouble. He is described as displaying great speed and agility when one of his girl friends pursued him with a firearm. He is the putative father of two children, one of whom he acknowledges but had difficulty remembering the child's name.

Witnesses described how plaintiff showed much skill and dexterity as a trick rider on a three-wheel vehicle. He is said to have performed acrobatics with these vehicles and to have ridden them on rough terrain. In this connection he was described as a "real daredevil."

Witnesses have described how plaintiff lifted heavy objects and moved heavy furniture. He admitted picking up one young lady weighing 140 pounds and carrying her into her house after she had fallen while intoxicated.

■ I am convinced that plaintiff sustained no loss of income from his injury. There is much evidence from his associates and girl friends that plaintiff was engaged in selling cocaine and marijuana during the pertinent period. His principal live-in girl friend testified that he was selling these drugs and supplying them to her during the period they were living together. This

covered periods from June, 1986 to August, 1987 and from November, 1987 to January 1988.

The claim of the plaintiff is denied and dismissed as to both defendants. The counterclaim of Janoush for recoupment of maintenance and cure is denied and dismissed. The plaintiff did sustain an injury while in their service—but one not resulting from negligence or unseaworthiness. The funds paid by Janousch for maintenance and cure have fully compensated plaintiff for this insignificant injury.